# WHEELING.

### FRANK & CO. v. BRUNNEMANN.

### July 23, 1875.

1875.
June Term.

1. When a lessee is, by the terms of his lease, restricted to a particular use of the demised premises, equity will, generally, restrain him from any other use of them, even though no irreparable injury be shown to result from such breach.

2. It is sufficient, on demurrer, to sustain a bill of injunction to stay waste and prevent the removal of improvements, that the bill alleges that complainant is the owner and entitled to the possession of the premises with the improvements and that defendants are in possession and threaten to destroy the improvements and that they are insolvent and unable to respond in pecuniary damages.

3. A court of equity will, in a proper case, grant an injunction to restrain the tenant from doing a certain act, whether it amounts to waste or not, provided it be directly contrary to the tenant's own covenant, or even in contravention of an agreement which may be inferred from the course of dealing between the parties.

4. Although a bill of injunction may pray for relief, which a court of equity has not jurisdiction to grant, still if the bill prays for other relief which the statements of the bill *prima facie* authorize, it is error in the court, on demurrer, to sustain a demurrer to the bill and dissolve the injunction and dismiss the bill, because of its want of jurisdiction to grant all the relief prayed for.

5. Although it appear on the face of the the bill of injunction that the personal representative of a deceased lessee, who died intestate, is a necessary party defendant to the suit, before final adjudication, yet if it appear by the bill that such personal representative had not at the time of the filing thereof been appointed, a demurrer to the bill should not be sustained and the injunction dissolved and bill be dismissed, merely because such personal representative is not made a party to the original bill—at least until a reasonable time for the appointment of such personal represen-

tative and making him a defendant in the cause by amended bill and bringing him before the court, by proper process—shall have been allowed, by the court and suffered to pass unheeded.

6. A *prima facie* case for a bill of injunction and account as between landlord and tenant shown and stated in the opinion of the Court filed in this cause.

Appeal and *supersedeas* from a decree of the circuit court of Wirt county rendered on the 8th day of May, 1874, granted on the petition of Simon Frank, Daniel Bloom and Leon Hass, partners doing business under the firm name of S. Frank & Co., and also Solomon Sterne, all of whom were the plaintiffs below. The defendants below were Edward Brunnemann, surviving obligor of himself and August Behrens and J. W. Burson and Andrew Maze. The other facts appear in the opinion of the Court.

The Hon. James M. Jackson, judge of said circuit court, presided at the hearing below.

*Walter S. Sands* for the appellants.

There was no appearance for the appellees.

HAYMOND, PRESIDENT:

Simon Frank, Daniel Bloom and Leon Hass, partners in business under the firm name of S. Frank & Co., filed their bill of injunction in the circuit court of Wirt county, on the —— day of January, 1874, against Edward Brunnemann, surviving obligor of himself and August Behrens, and J. W. Burson and Andrew Maze.

The plaintiffs aver in their bill that they are the owners of a tract of land situate on the Little Kanawha river, in Wirt county, West Virginia, known as the Fairfax farm, containing five hundred acres; that the legal title to the land is in Solomon Sterne, who holds the same for himself and the other plaintiffs; that about one hundred acres of the land is improved and suitable for farming purposes, and the balance is wood land, con-

taining very valuable timber; that plaintiffs purchased the land for oil purposes, and paid a large sum of money therefor; that in the year 1869 plaintiffs being convinced that the land was not oil land, they determined to lease the same, or employ parties to go thereon, repair the fencings and cultivate the improved land, and to manufacture timber into cord wood, staves, &c., and to market the same, so that they might realize something from their investment, and also get their good tillable land in a good state of cultivation; that in furtherance of that determination, on the 29th of December, 1869, they employed Edward W. Brunnemann and August Behrens to occupy the farm and wood land, and to cultivate the farm and to cut and manufacture timber thereon during the term of five years, commencing on the 1st day of January, 1870. The plaintiffs file with their bill, as an exhibit A, a paper writing, averred to be a copy of the said contract, which is in these words, viz: "This agreement, made at the city of New York, this 29th day of December, in the year eighteen hundred and sixty-nine, between Simon Frank, Daniel Bloom and Leon Hass, junior, composing the firm of S. Frank & Co., of the first part, and Edward W. Brunnemann and August Behrens, of the second part, WITNESSETH : That said parties of the first part hereby employ said parties of the second part to occupy the farm and wood land known as the Fairfax farm, in Burning springs, Wirt county, in the State of West Virginia, and to cultivate said farm and cut timber on said wood land during the term of five years, commencing on the first day of January, one thousand eight hundred and seventy. Said parties of the second part covenant to cultivate said farm, and to cut timber on said wood land, and to sell the products of said farm and said timber to the best of their ability, and for that purpose to employ and pay for such assistance as may be necessary, and to devote their entire time and attention to said business, and to keep full and accurate accounts of such farm products, of all timber so cut, and of all sales thereof,

and of all expenses connected therewith, and on the first day of each and every month during the said term to render such accounts to said parties of the first part, and to pay them the one-half the net proceeds of such sales, after defraying all necessary expenses incurred by said parties of the second part in said business, and all taxes imposed on said premises during said term. Said parties of the second part further covenant not to sell any of said farm products nor timber for other terms than cash on delivery, not a greater distance than forty miles from said premises, except by special directions from said parties of the first part, nor to cut any sapling nor any more timber than may be saleable from time to time, and that said parties of the second part will keep said farm and wood land in good order and condition. And it is further provided, that if any default shall be made by said parties of the second part, or either of them, in the performance of the aforesaid covenants on their part, then, in that event, the employment hereby given them, and all right and lien of said parties of the second part in said farm products and timber shall cease. Nothing herein contained shall be so construed as to limit the right of said parties of the first part and their agents to enter upon said farm and wood land whenever they may see fit, and use the same for the purpose of mining or boring for oil, or for making any other improvements, or for any other purposes not materially interfering with the cultivation of said farm, and the cutting of said timber, so as to render said parties of the first part liable to said parties of the second part, or to any other party for any expenses or liabilities incurred by said parties of the second part in carrying on the business aforesaid, or as to entitle said parties of the second part to any compensation for their services except as above prescribed. Said parties of the first part agree to make such advances as they may deem reasonable to said parties of the second part, in order to enable them to carry on said business.

Said parties of the second part shall be jointly and severally liable to the said parties of the first part on the aforesaid covenant. In witness whereof said parties hereto have hereto set their hands and seals the day and year first above written.

S. Frank & Co.      [seal.]
Simon Frank.        ·[seal.]
E. W. Brunnemann.   [seal.]
August Behrens.     [seal].

Sealed and delivered in the presence of M. A. Kershudt."

Plaintiffs, after setting out the contract, in their bill, further say, that the said Brunneman and Behrens, in pursuance of said employment and contract, sometime in the spring of 1870, went upon the land and took possession thereof, and remained thereon until in the fall of 1871, when the said Behrens died intestate, and soon thereafter his family left this State, and no person ever ·qualified as his representative in this State; that he owned no property at the time of his decease known to the plaintiffs; that his surviving obligor, E. W. Brunnemann, remained in possession of the land and is yet in possession thereof under said contract. And plaintiffs charge that said Brunnemann and Behrens did not, nor have they performed said contract during the lifetime of .said Behrens, nor has said Brunnemann performed said ·contract since the death of said Behrens, but has wholly failed to cultivate said farm and keep the same in repair, and they have failed to cut and market timber off of said wood land, and have wholly failed to devote their entire time and attention to said business, and to keep full and accurate accounts of the products of the said farm and timber, and sale thereof, and to report the same on the first day of each and every month, as required by .said contract and to pay the taxes on the land, and to ·take care of the timber thereon, and the saplings growing thereon ; that they (plaintiffs) have on their part faith-

1875.
June Term.

Frank & Co.
v.
Brunnemann.

fully kept and performed said agreement in all respects, and have made advances from time to time to the said Brunnemann and Behrens of large sums of money, amounting in all to $1,766—to enable them to carry on said business, which said amount was furnished them at their request; that plaintiffs, being residents of New York, and having faith and confidence in said Brunnemann and Behrens, advanced said money to enable them to improve said land and manufacture said timber, and expecting to get a return in profit from said business; but on the contrary thereof they aver that they have not received one cent in return or profit, and that said Brunnemann and Behrens have made no valuable improvements on the land, but have allowed and permitted the land to grow up in briars and sprouts, and the fencing to go to decay, and have only remained on said land idle, and using the money advanced to them to live upon and have sold oft three hundred very valuable forrest trees, one hundred of which have been sold and hauled off, and run to market—and that said Brunnemann has recently pretended to sell two hundred more trees to J. W. Burson and Andrew Maze, who are now cutting and destroying the said timber, and Brunnemann has received money for said timber and applied the same to his own use; that said timber is very valuable to said tract of land, as it lies near the improved part of the land, and is necessary for the use of the improved land in making fencing and buildings, and it allowed to be taken off will work irreparable damages to the land, as the balance of the timber land is separated from the improvement by a large run and hills, so that it cannot be conveniently hauled to the improvement.

Plaintiffs also aver that they have tried to get said Brunnemann to remove from said land and give up the premises, but he refuses to do so, and continues on the land; that he has wholly failed to pay the taxes on the land for the years 1872 and 1873, which amount to $205.94, and that by his failure to perform said contract,

he has forfeited all right to said land, products and timber, and that he has no right or authority to sell the said timber growing on said land, and the said Maze and Burson have been notified by plaintiff's agent Jesse Lee, several times, not to cut or haul any timber on said land, but notwithstanding the said Maze, Burson, and Brunnemann combined and conspired together for the purpose of stripping the land of its valuable timber for their own private gain and profit without the consent of plaintiffs, although all of the defendants are insolvent, and are now actually engaged in cutting and hauling said timber, and if the said timber is allowed to be cut from said land the damages to the land will be irreparable, as a large part of the land is available, and there is not now more timber left upon the land than is necessary for the use of the farm, and the timber will be of more value standing on the farm than any other way, because it is needed for the absolute use of the farm ; that the contract does not authorize Brunnemann to sell timber standing on the land, and the said sale to Burson and Maze was in violation of said contract and the rights of the plaintiffs ; that said Behrens, deceased, left no estate, real or personal, in this State, known to plaintiffs and they do not know the name of his widow or children, or their place of residence ; but plaintiffs ask leave to make them parties if their names shall be hereafter ascertained.

Plaintiffs, also aver that said Brunnemann has broken his said contract—has paid no rent for said property, nor any compensation for the timber he has taken, and but a small amount of the taxes, and has converted to his own use the money furnished him by the plaintiffs to carry on the said business, and that owing to his insolvency, the plaintiffs are without adequate remedy at law.

Plaintiffs pray that the said Brunnemann, Maze and Burson be made defendants to the bill and that each of them be required to answer the same and that they be perpetually restrained and enjoined from removing timber, or other property, from the said premises, and from

cutting any more timber thereon; that said Brunnemann be enjoined from selling any more timber and be required to pay the plaintiffs the amount he is indebted to them; and that Brunnemann be required, by decree of the court, to give up the possession of the land and premises and that said contract be declared forfeited as to any claim of right in said Brunnemann longer to hold the said premises thereunder. And plaintiffs pray that such other and further general and special relief be granted to them as the nature of the case may require or to equity may seem meet.

An injunction was allowed upon this bill by the judge of the circuit court in vacation.

On the 7th day of May, 1874, the defendants appeared and filed a demurrer to plaintiffs' bill.

And afterwards on the 8th day of May, 1874, the circuit court made a decree in the cause in these words, viz: "This day the defendant Brunnemann tendered here in court his answer to complainants' bill, to which the complainants file written exceptions, endorsed thereon and moved the court to dissolve the injunction heretofore awarded in this cause: whereupon the matter arising upon said exceptions, being submitted to the court, said exceptions are overruled: whereupon the complainants asked the court to grant them a continuance in order to file a special replication to defendant's answer, which is also overruled. And the said cause coming on to be heard on the bill and the demurrer filed thereto, and the motion to dissolve the said injunction, and the answer of the said defendant, on consideration whereof the Court is of opinion that said demurrer is well taken, and therefore sustains the same. It is therefore adjudged, ordered and decreed that said injunction be dissolved and said bill dismissed, and that the defendant Brunnemann recover of the complainants his costs about his defence in this behalf expended."

1875.
June Term.

Frank & Co.
v.
Brunnemann.

1875.
June Term.

Frank & Co.
v.
Brunnemann.

Notwithstanding the form in which this decree is entered, it is evident that the Court only heard and acted in the cause upon the bill and demurrer thereto, and that the court dissolved the injunction and dismissed the bill because it was of opinion that the bill was insufficient on its face, taking all its statements, averments and allegations as being true, as admitted by the demurrer. No other question is therefore before us to be determined at this time, except the question, is the bill insufficient upon its face to give a court of equity jurisdiction of the matters therein stated, alleged and prayed in whole or in part? If equity has jurisdiction to grant any part of the relief prayed, and sufficient matter and cause appears on the face of the bill to authorize such relief, then the circuit court erred in its decree in dismissing the bill or the demurrer. The defendants were in default at the term of the court when the demurrer and answer were filed. The bill had been taken for confessed at rules and it so stood on the docket of the court, and when the answer was filed the defendant was entitled to a reasonable time to consider what reply he should make thereto. The answer admits some allegations of the bill, and denies others, &c., and concludes by praying that the injunction awarded in the cause be dissolved, and that the property restrained thereby be released, and directed to be sold, "by the sheriff of Wirt county, either at public or private sale, whichever may prove the most advantageous, and apply the money realized from such sale to the payment of the tax against said farm, and that the bill may be retained, and the matters therein complained of referred to a commissioner of this Honorable Court with directions to state an account of the transactions between this defendant and the said S. Frank & Co." The contract in this case may be termed a lease for the term of five years, from the 1st day of January, 1870, with stipulations and covenants. And although it contains a provision that if any default be made by the tenants, or either of them, in the performance of the said covenants,

on their part, then, in that event, the employment hereby given to them and all right and lien of the tenants in and on the farm products and timber shall thereupon cease ; still the contract contains no provision authorizing the plaintiffs to re-enter upon the premises and take possession thereof upon the happening of the event. When a lessee is, by the terms of his lease, restricted to a particular use of the demised premises, equity will restrain him from any other use of them, even though no irreparable injury be shown to result from such breach of covenant. High on Injunctions, section 14 ; *Steward v. Winters*, 4 Sandf. (N. Y.) Ch. 587, "It has been *held* sufficient to sustain a bill for an injunction to stay waste and prevent the removal of improvements, that the bill alleges that complainant is the owner and entitled to the possession of the premises with the improvements and that defendants are in possession and threaten to destroy the improvements, and that they are insolvent and unable to respond in pecuniary damages." High on Injunctions, section 424, "A court of equity will grant an injunction to restrain the tenant from doing a certain act, whether it amounts to waste or not, provided it be directly contrary to the tenant's own covenant or even in contravention of an agreement, which may be inferred from the course of dealing between the parties. In a case where a tenant from year to year having received notice to quit, was proceeding to take away the crops, manure, &c., contrary to the usual course of husbandry, and to cut and damage the hedge-rows, &c., the chancellor granted an injunction, observing that the principle applied equally to the case of a tenant from year to year, as to a lease for a longer term." Taylor's Landlord and Tenant, section 691. Under the authorities the case made by the bill is *prima facie* sufficient to authorize an injunction by a court of equity against the defendants. While a court of equity, generally, will not take jurisdiction of a case to enforce a penalty or forfeiture, still such court is open to complaints,

and to restrain wrong and injury in proper cases even between landlords and tenants; and especially in a case such as the statements and averments of the bill, *prima facie*, show this case to be. Although the bill in this case does not, in strict form, pray for an account, still it shows, *prima facie*, a proper case for an account as between plaintiff and the lessees. It prays that plaintiffs be paid the amount due them under the allegations of the bill, and this could not well be ascertained, under the circumstances stated, without an account being taken. The bill also contains a prayer for general relief. While the court as a court of equity, will not enforce the penalties or forfeitures which may be provided in the lease by decreeing that Brunnemann deliver possession of the property to the plaintiffs, under the case stated in the bill, still the court may grant plaintiffs other relief prayed for in the bill which is proper for the exercise of its jurisdiction.

The personal representative of August Behrens should be made a party to the case. The personal representative is not made a party, however, but I think the bill shows sufficient excuse for that omission for the time being—the excuse is that there is no personal representative, as yet; although the bill alleges that Behrens left no real or personal estate within this State, that fact does not dispense with the necessity of there being such personal representative, and his being made a party to this suit. But, under the circumstances, it was not indispensibly necessary that the personal representative should be made a party at the commencement of the proceedings in this case. In such case, before sustaining a demurrer to the bill, and dissolving the injunction and dismissing the bill for that cause simply, a reasonable time, at least, should have been allowed the plaintiffs to procure the appointment of such personal representative, and bring him before the court by amendment and process. Otherwise, in many cases, injunctions could not be applied for until the wrong and injury was done.

How this case, as to the injunction or matter of account should be finally disposed of, upon its merits, I do not now intimate any opinion. It would be improper to do so. I only mean to determine that the statements, allegations and averments of the bill, *prima facie*, make a proper case for injunction and for an account.

For the foregoing reasons, I am of opinion that the circuit court erred in its said final decree.

The final decree of the circuit court of Wirt county, rendered on the 8th day of May, 1874, must be reversed, with costs to the appellants against the appellees: And this Court, proceeding to render such decree in the cause as the court below should have rendered, it is adjudged, ordered and decreed that this cause be remanded to the said circuit court of the county of Wirt, with leave to the plaintiffs to file a proper replication to the answer of the defendant, Brunneman, filed in this cause, if they shall ask so to do, within such time as the said circuit court may deem reasonable; and also with leave to file an amended bill making the personal representative of August Behrens a party defendant to this cause, and for such other and further pleadings therein there to be had as may be in accordance with the principles and rules governing courts of equity.

Hoffman and Moore, Judges, concurred.

DECREE REVERSED AND CAUSE REMANDED.